NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0693n.06

No. 09-4219

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**_Sep 29, 2011_**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| DALE P. DATTILIO, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before: GRIFFIN and WHITE, Circuit Judges; WATSON, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** After pleading guilty to three counts charging violations of federal child-pornography laws, Dale Phillip Dattilio was sentenced to serve 360 months for the first two counts and 20 years for the third. He appeals the district court's ruling that his prior state conviction of gross sexual imposition triggered enhanced penalties under federal law; he also challenges his sentence as greater than necessary. We **AFFIRM**.

**BACKGROUND**

The underlying facts are undisputed. Between August 1, 2004, and July 12, 2005, Dattilio connected to the internet from his home computer and, using peer-to-peer file-sharing software,

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

downloaded and exchanged child pornography with other online users.[1]  On July 12, 2005, Dattilio

possessed 199 compact discs containing numerous image and video files depicting real minors

engaged in sexually explicit conduct and other child pornography.  Among these files were images

and videos of prepubescent minors engaged in sexually explicit conduct and being subjected to

sadistic conduct.  Dattilio was arrested and charged with:  (Count I) receiving and distributing visual

depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2);

(Count II) receiving and distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A);

and (Count III) possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  The

minimum sentence for a defendant convicted under § 2252(a)(2) or § 2252A(a)(2) is five years, with

a maximum of 20 years.  §§ 2252(b)(1), 2252A(b)(1).  However, if the defendant has certain prior

convictions, the minimum increases to 15 years and the maximum to 40.  *Id.*  The maximum

sentence for violating § 2252A(a)(5) is 10 years, unless the defendant has certain prior convictions,

in which case 10 years is the minimum sentence and 20 years the maximum.  § 2252A(b)(2).  On

April 21, 2009, pursuant to a written Plea Agreement, Dattilio pleaded guilty to all counts and

stipulated that in 1987  he was convicted of gross sexual imposition on a child under the age of 13

under Ohio law.

Dattilio's Presentence Investigation Report ("PSR") determined pursuant to the U.S.

Sentencing Commission Guidelines ("the Guidelines") that his base offense level was 22.  *See* U.S.

Sentencing Guidelines Manual ("U.S.S.G.") § 2G2.2(a)(2) (2008).   In addition, the PSR

---

[1]Peer-to-peer file-sharing programs allow computer users to view, download and share digital files stored on any other user's computer without special permission.  *See generally MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 918-23 (2005).

recommended that the district court apply the following six enhancements based on the specific characteristics of Dattilio's offense:

1. Two levels because the files seized involved a prepubescent minor or a minor under the age of 12, *see* § 2G2.2(b)(2);

2. Five levels because Dattilio distributed files in exchange for "the receipt, or expectation of receipt, of a thing of value [*i.e.*, other files depicting child pornography], but not for pecuniary gain," as shown by his use of peer-to-peer file-sharing software, § 2G2.2(b)(3)(B);

3. Four levels because the materials portrayed sadistic conduct, *see* § 2G2.2(b)(4);

4. Five levels because Dattilio "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," § 2G2.2(b)(5), as shown by his 1987 conviction;

5. Two levels because the offenses involved the use of a computer, *see* § 2G2.2(b)(6); and

6. Five levels because the discs seized contained more than 600 images, *see* § 2G2.2(b)(7)(D).

The PSR found that after deducting three levels for acceptance of responsibility, Dattilio had a total offense level of 42, which, combined with a criminal-history category of I, resulted in a sentencing range of 360 months to life on all counts. The PSR also concluded that Dattilio's 1987 conviction of gross sexual imposition was a prior conviction for purposes of 18 U.S.C. §§ 2252(b)(1), 2252A(b)(1) and 2252A(b)(2), such that he faced a maximum of 40 years on Counts I and II, and 20 years on Count III.

Dattilio did not file objections to the PSR. However, prior to sentencing, he submitted a memorandum challenging whether his 1987 conviction should be considered a prior conviction under §§ 2252(b)(1) and 2252A(b)(1) & (2). Dattilio also argued that, much like the well-known disparity in the Guidelines' treatment of crack- and powder-cocaine offenses, the child-pornography Guidelines – § 2G2.2 in particular – consistently yield excessive sentencing ranges that do not further the purposes of sentencing defined by 18 U.S.C. § 3553(a)(2).

3

The district court held that Dattilio's 1987 conviction of gross sexual imposition was a prior offense contemplated by 18 U.S.C. §§ 2252(b) and 2252A(b). The court reviewed the PSR and agreed that all six offense-level enhancements were applicable. The court sentenced Dattilio to 360 months on Counts I and II, the bottom of the Guidelines range, and 240 months on Count III, the statutory maximum, to be served concurrently. Dattilio timely appealed.

## DISCUSSION

### A. Dattilio's Conviction of Gross Sexual Imposition was a Prior Conviction for Purposes of 18 U.S.C. §§ 2252(b) and 2252A(b)

"We review de novo the district court's legal conclusion that a prior conviction is a qualifying offense." *United States v. McGrattan*, 504 F.3d 608, 610 (6th Cir. 2007) (citation omitted). When deciding whether a prior state-law conviction triggers an enhanced sentence under §§ 2252(b) or 2252A(b), we look first to the "fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *McGrattan*, 504 F.3d at 611. If necessary, we may also consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *McGrattan*, 504 F.3d at 611.

A defendant convicted of violating 18 U.S.C. §§ 2252(a)(2) or 2252A(a)(2) is subject to at least 5 years and not more than 20 years imprisonment, but,

> if such person has a prior conviction under . . . the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, . . . such person shall be . . . imprisoned for not less than 15 years nor more than 40 years.

4

§§ 2252(b)(1), 2252A(b)(1). The same rule applies to defendants convicted of violating § 2252A(a)(5), with differences in the minimum and maximum sentences.[2] *See* § 2252A(b)(2). Chapter 110 of Title 18, U.S. Code, which contains §§ 2252 and 2252A, does not define the offenses of aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor.

In 1987, Dattilio pleaded guilty of gross sexual imposition on a child under the age of 13.[3] During the relevant period, Ohio's gross-sexual-imposition statute provided:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender . . . when any of the following apply:
> . . .
> (3) The other person . . . is less than thirteen years of age . . . .

Ohio Rev. Code ("O.R.C.") § 2907.05(A) (1987) (*quoted in State v. Astley*, 36 Ohio App. 3d 247, 523 N.E.2d 322, 324 n.2 (1987)). At the time, Ohio law defined "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." O.R.C. § 2907.01(B)(1987) (*quoted in State v. Wilson*, No. 52031, 1987 WL 10042, 1987 Ohio App. LEXIS 6933, at *12-13 (Ohio Ct. App. Apr. 23, 1987)).

In his memorandum and at sentencing, Dattilio argued that his 1987 conviction did not fall within 18 U.S.C. §§ 2252(b)(1), 2252A(b)(1) or § 2252A(a)(5) because federal law did not recognize the crime of gross sexual imposition. Since Chapter 110 of Title 18 does not define aggravated

---

[2]Because the relevant portions of 18 U.S.C. §§ 2252(b) and 2252A(b) are worded identically, we treat them as one. *See McGrattan*, 504 F.3d at 611 (noting that §§ 2252A(b)(1) and 2252(b)(2) are "materially indistinguishable" from one another).

[3]The indictment in that case alleged that Dattilio had sexual contact with his stepdaughter, beginning when she was six or seven years old. Dattilio denied having intercourse with the victim and stated that his conduct consisted only of "touching."

sexual abuse, sexual abuse, or abusive sexual conduct involving a minor, Dattilio argued that the district court should construe these offenses according to their definitions in Chapter 109A of the same title, specifically: 18 U.S.C. § 2241(c) (aggravated sexual abuse of a child), § 2242 (sexual abuse) and § 2244(c) (abusive sexual contact involving a child under 12). The Government observed that circuits are split over whether the undefined offenses of 18 U.S.C. §§ 2252 and 2252A are to be construed according to 18 U.S.C. §§ 2241(c), 2242 and 2244(c),[4] but stated that the conflict was immaterial in this case because Ohio's gross-sexual-imposition offense fell within the definition of abusive sexual contact involving a child under federal law. After comparing the relevant statutory provisions, the district court agreed with the Government and held that Dattilio's prior conviction fell within §§ 2252(b) and 2252A(b).

On appeal, Dattilio maintains his position that there is no federal equivalent to his prior state conviction and that none of the offenses mentioned in 18 U.S.C. §§ 2252(b) or 2252A(b) – aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor – is equivalent to gross sexual imposition under Ohio law. We disagree. The definition of "sexual contact" is nearly identical under federal and Ohio law. *Compare* 18 U.S.C. § 2246(3) ("[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass,

---

[4]*Compare United States v. Gilbert*, No. 10-4039, 2011 WL 1595055, 2011 U.S. App. LEXIS 8815, at *9-11 (4th Cir. Apr. 28, 2011) (refusing to import the definitions of Chapter 109A into Chapter 110), *United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009) (same), *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007) (same), *United States v. Hubbard*, 480 F.3d 341, 348-49 (5th Cir. 2007) (same), *and United States v. Harding*, 172 F. App'x 910, 913-14 (11th Cir. 2006) (same), *with United States v. Osborne*, 551 F.3d 718, 720-21 (7th Cir. 2009) (looking to Chapter 109A to construe undefined terms in Chapter 110). This Circuit has yet to address this question, but we need not resolve it here.

degrade, or arouse or gratify the sexual desire of any person"), *with* O.R.C. § 2907.01(B), *supra*.

Based on these definitions, there is no doubt that Dattilio's 1987 offense, which consisted of having

years of sexual contact with a girl between the ages of 7 and 13, constitutes abusive sexual contact

involving a child under 12. Therefore, Dattilio's argument fails.

**B.  The District Court Considered Dattilio's Character and Background When Imposing Sentence**

Dattilio asserts that the district court failed to consider his character and background in

devising his sentence. Although Dattilio does not specify the nature of his challenge, it is to the

procedural reasonableness of his sentence. A sentence is procedurally unreasonable if –

> the district court commit[s a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir.

2008) (en banc).

Dattilio did not raise this issue at sentencing; therefore, our review is for plain error. *See*

*United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008) ("[P]lain-error review applies on appeal

to those arguments not preserved in the district court." (citation omitted)). Plain error occurs when:

(1) there is an error, which is (2) clear or obvious, (3) affects the defendant's substantial rights, and

(4) seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States*

*v. Marcus*, ___ U.S. ___, 130 S. Ct. 2159, 2164 (2010); *United States v. Wallace*, 597 F.3d 794, 802

(6th Cir. 2010).

A sentencing explanation is procedurally reasonable if the sentencing judge provides "enough [reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). To satisfy procedural reasonableness, "when a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Johnson*, 640 F.3d 195 (6th Cir.2011) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)). The key question is always "whether '[t]he record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 358).

Dattilio argues that the district court failed to take into consideration the fact that he was abused as a child, that he has a close relationship with his son and that he was diagnosed as HIV positive in 2006. The record flatly belies this. The district court went over Dattilio's personal characteristics at length, discussing his familial relationships, physical health, education and work history, and his willingness to seek counseling to deal with mental and emotional issues. The court also heard Dattilio explain how he began consuming pornography after enduring sexual abuse at the age of nine. By itself, the fact that the district court did not mention Dattilio's history of abuse when imposing sentence does not conclusively establish that the court ignored this argument. To the contrary, viewed in its totality, the transcript of Dattilio's sentencing hearing shows that the court thoughtfully considered all of the 18 U.S.C. § 3553(a) factors and listened attentively to Dattilio's

8

and his lawyer's statements. Dattilio's arguments were "conceptually straightforward," and "[n]othing in the record, or the context of the hearing, suggests that the court did not listen to, consider and understand every argument" that he made. *Vonner*, 516 F.3d at 388 (citing *Rita*, 551 U.S. at 358) (internal quotation marks and brackets omitted). Thus, the district court did not err.

## C. Dattilio's Punishment was not Greater than Necessary to Achieve the Sentencing Goals of 18 U.S.C. § 3553(a)

In sentencing Dattilio, the district court applied several sentencing enhancements mandated by U.S.S.G. § 2G2.2. Dattilio does not claim that these enhancements were improperly applied.[5] Instead, he argues that their combined effect is to produce a Guideline range that is greater than necessary to satisfy the objectives of sentencing defined by 18 U.S.C. § 3553(a).

This Court reviews whether a sentence is substantively reasonable under an abuse-of-discretion standard. *Gall*, 552 U.S. at 51; *see also United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009) ("A defendant . . . is not required to object to the substantive reasonableness of his sentence to preserve that issue for appeal."). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir.

---

[5]Dattilio's 1987 conviction of gross sexual imposition resulted in a five-point enhancement pursuant to U.S.S.G. § 2G2.2(b)(5), which applies when a defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Dattilio's brief does not make clear whether he objects to the use of that conviction as the basis for the enhancement or only to its being treated as a prior offense under §§ 2252(b) and 2252A(b). However, at sentencing, Dattilio's attorney specifically stated that he did not contest the enhancement, but only whether the conviction triggered the higher penalties of §§ 2252(b) and 2252A(b). Since Dattilio expressly waived this argument below, the Panel cannot review it unless "the interests of justice demand otherwise." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quotation marks and citation omitted); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (citation omitted)). Dattilio does not argue that the interests-of-justice exception applies here.

2010).  "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010) (internal quotation marks and citation omitted).  A sentence is reviewed in light of "the totality of the circumstances, including the extent of any variance from the Guidelines range."  *Gall*, 552 U.S. at 51; *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011).  Sentences within the ranges recommended by the Guidelines are entitled to a rebuttable presumption of reasonableness, but sentences outside the Guidelines are not presumptively unreasonable.  *Gall*, 552 U.S. at 51; *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) .

Dattilio argues that U.S.S.G. § 2G2.2's numerous offense-level enhancements almost inevitably produce sentencing ranges near or above the statutory maximum, even for run-of-the-mill offenders, and that the resulting sentences are "greater than necessary" to achieve the purposes of sentencing.  Therefore, Dattilio argues, the district court should have rejected the flawed policies behind U.S.S.G. § 2G2.2 and departed from the Guideline.  In support, he cites a comment by Assistant Federal Defender Troy Stabenow, *Deconstructing the Myth of Careful Study:  A Primer on the Flawed Progression of the Child Pornography Guidelines* (2009), *available at* http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf (last visited August 3, 2011).[6]

---

[6]Stabenow's thesis is that the Sentencing Commission, whose "principal purpose is to establish sentencing policies and practices for the federal criminal justice system," U.S.S.G. § 1A1.1, has been sidelined with regard to child-pornography Guidelines by Congress, which has repeatedly directed the Commission to increase sentencing ranges for offenders and even made direct amendments to § 2G2.2.  *See* Stabenow, *supra*, at 3-26.  These changes were often decided without the Commission's input and, in some cases, over its objections.  *See id.*  The result, according to Stabenow, is that the average sentence for child-pornography offenders has risen from 20.59 months in 1997 to 91.3 months in 2007, a 443% increase in just over ten years.  *Id.* at 2.  As summarized by the Seventh Circuit,

"Stabenow's article has been gaining traction in the district courts and has been cited numerous times for the proposition that a judge who disagrees generally with the harshness of the child-pornography guidelines may impose a sentence well below the guidelines range for that reason alone." *United States v. Huffstatler*, 571 F.3d 620, 622 (7th Cir. 2009) (per curiam).

This Court has already noted that § 2G2.2 is "fundamentally different" from most other Guidelines because, whereas "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing policies . . . , the Commission did not use this empirical approach in formulating the Guidelines for child pornography.'" *United States v. McNerney*, 636 F.3d 772, 775-76 (6th Cir. 2011) (quoting *United States v. Dorvee*, 604 F.3d 84, 95 (2d Cir. 2010)). Nevertheless, the Court observed, "it is unquestionably Congress' constitutional prerogative to issue sentencing directives" like the various offense-level enhancements in child-pornography cases. *Id.* at 778.

We have recognized that a district court disagreeing with the child-pornography Guidelines for policy reasons may reject those Guidelines based on that disagreement. *Brooks*, 628 F.3d at 799-800; *United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009). We have also recognized that a district court is not required to so depart. *Janosko*, 355 F. App'x at 895. The record is clear that

---

> Stabenow presents the following syllogism: *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), allows district courts to disagree on policy grounds with sentencing guidelines that exhibit methodological flaws; the same methodological flaws that characterize the crack guidelines – lack of empirical support – also undermine the child-pornography guidelines; therefore, district courts may sentence child-pornography offenders below the guidelines range based on disagreement with the policy embodied in the guidelines.

*United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009) (per curiam) (citing Stabenow, *supra*, at 27-32).

the district court did not arbitrarily select a sentence or rely on impermissible factors to devise Dattilio's penalty. Nor did the court elevate one factor over the other, or fail to consider any relevant factor. The court correctly calculated the applicable sentencing range and, after hearing the defense's arguments and reviewing the relevant § 3553(a) factors, sentenced Dattilio to the lower end of the recommended range on Counts I and II and imposed the statutory maximum on Count III, concluding that, under the circumstances presented, a Guidelines sentence satisfied the objectives of sentencing. There was no abuse of discretion under the circumstances.

The judgment of the district court is **AFFIRMED**.