NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0161n.06

Case No. 21-5589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 18, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KARLOS DWAYNE BUTLER, JR., | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SUTTON, Chief Judge; MOORE and GILMAN, Circuit Judges.

SUTTON, Chief Judge. Karlos Butler challenges the reasonableness of his 106-month sentence for trafficking heroin and using a firearm in the process. Because the district court adequately considered his arguments and did not impose an unduly long sentence, we affirm.

I.

In the spring of 2019, Butler sold heroin to a police informant three times. On one of these occasions, the informant saw a gun in Butler's lap. After obtaining a search warrant, agents found two ounces of heroin on Butler; $4,660 in cash in his car; and digital scales, baggies, more heroin, and a loaded handgun in his bedroom.

Butler pleaded guilty to possessing heroin with intent to distribute it and to possessing a firearm in furtherance of drug trafficking. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 924(c)(1)(A)(i). Butler's advisory guidelines range came to 106 to 117 months of imprisonment.

Butler moved for a downward variance based on "adverse childhood experiences," including his father's incarceration and his mother's mental illness, and on the ground that a within-guidelines sentence would create unwarranted sentencing disparities. R.74 at 4. The court rejected the request and sentenced Butler to 106 months. It explained that the sentence was necessary to protect society, promote respect for the law, and deter crime.

## II.

On appeal, Butler challenges his sentence as procedurally and substantively unreasonable.

*Procedural reasonableness (adverse childhood experiences).* Butler argues that the district court failed to give sufficient attention to his difficult childhood as a mitigating factor. A district court must properly calculate the guidelines range, treat the range as advisory, consider the § 3553(a) factors, refrain from considering impermissible factors, base the sentence on facts that are not clearly erroneous, and adequately explain its reasoning. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review a district court's decision under the abuse-of-discretion standard. *Id.* at 56.

The district court properly calculated Butler's advisory guidelines range and explained its sentence. In doing so, the court adequately considered Butler's adverse childhood experiences as a potentially mitigating factor. As set forth in over 11 pages of the sentencing transcript, the court listened to this theory; asked questions; compared Butler's father's incarceration to other difficult childhood experiences, such as divorce or the death of a parent; pressed the government for a response; and considered it as part of Butler's personal "history and characteristics." It explained that, without a psychiatrist's report pinpointing how the experience altered Butler's brain functioning, a downward variance was not warranted and might create unwarranted disparities of its own. It ultimately denied the motion for a downward variance because it saw a guidelines

2

sentence as necessary to protect society, promote respect for the law, and achieve adequate deterrence. The court "listened to each argument," "considered the supporting evidence," and "was fully aware" of Butler's adverse childhood experiences, but it "simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range." *Rita v. United States*, 551 U.S. 338, 358 (2007).

Resisting this conclusion, Butler focuses on the court's suggested possibility during the hearing that someone might find Butler's experience aggravating rather than mitigating because Butler had seen firsthand the risks of misconduct given his father's prison sentence. That hypothesis, Butler argues, runs counter to the childhood-development literature, which recognizes that such experiences can impair brain function and should be thought of only in mitigating terms.

But "[n]othing in the record suggests that the district court *based* its sentence" on this ground. *United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021). The court raised this point to show that, without an expert detailing the impairment that Butler allegedly suffered, such arguments ran the risk of becoming unduly "subjective" and creating sentencing disparities. R.85 at 21. It did not say that it was increasing his sentence for this reason or, for that matter, was going to vary his sentence upward. It instead issued a sentence at the bottom of the advisory guidelines range. All in all, the court did not abuse its discretion by disagreeing with Butler's views about the significance of his childhood experiences (relative to the other § 3553(a) factors) or by raising the point that this argument would have gotten more traction with medical evidence.

*Procedural reasonableness (sentencing data).* Butler also claims that the district court misused data about the sentences of other individuals charged with distributing heroin. But Butler bears some responsibility for the alleged problem, and it did not drive the court's sentencing decision anyway. Both parties agree that Butler's counsel inaccurately characterized some of the

data. Counsel told the court that 55 percent of all heroin defendants were sentenced within the guidelines range and implied that roughly 10 to 15 percent of all heroin defendants received downward variances despite not providing substantial assistance to the government. As it turns out, when using the more precise data that both sides agree are correct, 50 percent (not 55 percent) of all defendants with Butler's offense level and criminal history category received within-guidelines sentences, and 23 percent of all defendants in the same categories (not roughly 10 to 15 percent) received downward variances or departures for reasons other than substantial assistance.

But Butler, not the court, introduced the inaccurate data. We "review invited errors when the interests of justice demand it," a choice that is "left largely to our discretion." *United States v. Montgomery*, 998 F.3d 693, 699 (6th Cir. 2021); *see United States v. Lechner*, 806 F.3d 869, 880 (6th Cir. 2015). When we do consider the claim, we review under the plain-error standard, requiring Butler to show: "(1) error occurred; (2) that error was obvious; (3) it affected the defendant's substantial rights; and (4) it affected the fairness, integrity, or public reputation of judicial proceedings." *Montgomery*, 998 F.3d at 700; *see United States v. Mabee*, 765 F.3d 666, 673–74 (6th Cir. 2014).

One problem for Butler is that the gap between the inaccurate and accurate characterizations of the data is not large. Butler's counsel overstated the share of within-guidelines sentences by 5 percentage points and implicitly understated the share of downward variances by 8 to 13 percentage points. Butler's misinterpretation of the data did not steer the district court far from the mark, making it far from "plain or obvious" that materially inaccurate information drove the sentence. All of the relevant 2019 data still show that a heroin defendant is more likely to get a within-guidelines sentence than a downward variance, and Butler received a within-guidelines sentence.

The second problem is that the statistics played a minor role in the sentencing hearing. Inaccurate data are pertinent to our review only if the numbers plainly served as "important factors" in the sentence. *United States v. Adams*, 873 F.3d 512, 518 (6th Cir. 2017). On plain-error review, we will affirm so long as the court did not place "excessive" "reliance" on them and did not take its eyes off the other relevant sentencing factors. *United States v. Cunningham*, 669 F.3d 723, 731 (6th Cir. 2012); *see United States v. Burnette*, 414 F. App'x 795, 800–01 (6th Cir. 2011). In her opening argument, Butler's counsel mentioned the data. The judge asked a follow-up question: "[H]ow many of those receive a sentence below the guideline range because they rendered substantial assistance to the government?" R.85 at 15. Counsel answered that 25 to 30 percent do and confirmed that her answer meant that the 25 to 30 percent who rendered substantial assistance were "part of the 40-something percent" with below-guidelines sentences. *Id.* at 15–16. After that, no one mentioned the data again. Through it all, the court imposed a bottom-of-the-range sentence, relying principally on factors other than avoiding disparities. Nothing suggests that "his sentence may have been different in [the mistaken data's] absence." *Adams*, 873 F.3d at 518. No plain error occurred, and for that reason there is no cognizable basis for sending the case back for a new sentencing hearing.

*Substantive reasonableness.* A claim of substantive unreasonableness turns on whether the sentence is "unduly long." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc); *see United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Our review is "highly deferential," *Rayyan*, 885 F.3d at 442, and we presume the reasonableness of within-guidelines sentences like this one, *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009).

The district court did not abuse its discretion. It relied on the "need to protect society, the need to promote respect for the law, [and] the need to provide for adequate deterrence." R.85 at

27–28. Given the harm that Butler caused and the repeated nature of his offenses, the district court did not unreasonably determine that these factors justified a within-guidelines sentence.

Butler worries that the district court failed to appreciate the risk of unwarranted sentencing disparities, pointing to the share of defendants receiving variances. He also notes that, because he received a firearm conviction in addition to his heroin conviction, his overall sentence is significantly higher than the average of other similar heroin offenders' overall sentences. But as often as not, the "objective" of avoiding sentencing disparities is "*furthered* by a within-guidelines sentence." *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011). By correctly calculating the guidelines range, the district court factored in the need to avoid disparities. *Simmons*, 587 F.3d at 363. That some fraction of similar defendants received variances does not show that the court abused its discretion in balancing the § 3553(a) factors and imposing a within-guidelines sentence here.

We affirm.